WILLIAMS *v.* MID-SOUTH PAVING Co. *et al.*

(In Banc. April 22, 1946.)

[25 So. (2d) 792. No. 36089.]

Alexander & Alexander, of Jackson, and **J. C. Fleming**, of Elba, Alabama for appellant.

**Wm. Harold Cox,** of Jackson, for appellees, Mid-South Paving Company.

108

**Vardaman S. Dunn,** of Jackson, for appellees, Trinidad Asphalt Manufacturing Company.

**L. A. Smith, Sr., J.,** delivered the opinion of the court.

The principal issue which confronts us on this appeal is whether or not appellees sustained by a preponderance of the evidence two pleas incorporated in their answer to the original bill of complaint in the Chancery Court of the First District of Hinds County, filed by appellants against them. By this suit, which is a proceeding by attachment in chancery, appellants sought, to collect from appellees the total sum of $15,824.85, because of a contract between the parties, dated September 25, 1943. The component items of this amount are: (1) $6,013.48, for damage generally to the equipment hereinafter described; (2) failure of appellees to return the equipment to appellants within the time agreed; (3) labor necessarily expended by appellants in repair of one Hercules Diesel Power unit, $360; damages beyond reasonable wear; (4) the value of one fuel pump for a Hercules Diesel Power

unit not returned to appellants; (5) $1,440, an amount equal to the freight charges on rented equipment from Demopolis, Alabama, to Kolla Springs, Mississippi; (6) $1,121.37, cost to appellants of assisting appellees in dismantling and loading the equipment at termination of the rental contract.

The relations, between the parties hereto, developed from the possession and ownership by appellants of an asphalt. plant then located at Demopolis, Alabama, and the status of appellees as joint adventurers in a paving project in Lowndes County, wherein is situated Kolla Springs, also called Kolola Springs in the record, by a contract with the State Highway Commission, and appellees' need of an asphalt plant on the job they were undertaking. On the date stated, appellees rented from appellants this asphalt plant, which consisted of equipment used to heat and mix the various ingredients that go to make an asphalt concrete surface on highways.

The sections of the contract pertinent to the issues on this appeal may be briefly summarized. It is termed within its recitations, a rental contract, and the parties thereto, being the parties hereto except as hereinafter explained, are called therein landlord and tenant. It contains a detailed inventory of the equipment by items. It provides for the amount of the rental, its incidence and method of calculation, its terms and time of payment, and other provisions as to rent not necessary to particularize. The appellees, as tenants, accepted "the equipment hereinabove set out in its present condition and acknowledges it to be in good working condition," and agreed to keep it so. Appellees, as such tenants, further, accepted delivery "for the rental period herein specified, of all of said equipment at Demopolis, Alabama, and agrees that it will pay the cost of transporting to Kolla Springs, near Columbus, Mississippi, where said plant is to be operated for the purpose herein contemplated; and at the expiration or earlier termination of this contract, tenant is to deliver and surrender said equipment and plant to land-

lord to a place to be designated by landlord and pay return transportation on same in equal amount to the cost of transporting the same from Demopolis, Alabama, to Kolla Springs, near Columbus, Mississippi.''

It is further agreed in said contract that ''the equipment is to be returned to landlord in as good condition as when received by tenant, reasonable wear excepted.'' By its eleventh article, the agreement was to the effect that ''time is the essence of this contract, and tenant hereby agrees to accept delivery of said equipment hereunder immediately upon execution hereof, and to comply with each and every term hereof in accordance with the agreements herein contained.''

Appellants filed suit in the Circuit Court of Hinds County, First Judicial District, on August 2, 1944, against appellees for breach of this contract solely as to payment of the rentals agreed to be paid, but which up to the time of filing suit had not been paid, in spite of strenuous dunning processes, seeking collection, short of suit. The amount demanded was $21,180. The declaration alleged, among other things, that on ''September 25, 1943, (they) entered into a rental contract with defendant,'' and a copy thereof was filed as an exhibit. It was also alleged that defendants, appellees here, took possession of the equipment, and ''agreed to pay the plaintiff (appellants here) for rent of said equipment,'' and then set out the agreement, and attached thereto was an itemized statement of the rent. It was also alleged in this circuit court action that ''defendants rented the said asphalt plant, machinery and equipment to be used by them in their operations under the contract which the defendant Trinidad Asphalt Manufacturing Company, has with the Mississippi State Highway Department known as Access Road Project No. DAWC-7 (1) Highway No. 5.'' And also, ''up to this date the defendants have made no payment whatsoever to the plaintiff for the rentals due as hereinabove set forth, which rentals are now due the plaintiff by the defendants and for the payment of which

repeated demands have been made on the defendants by the plaintiff, but payment has been refused.'' Demand was also made for such additional rentals as might thereafter accrue.

Appellees here, defendants to the circuit court action, filed no pleas, but six days after the filing of the declaration, on August 8, 1944, the parties effected an agreed settlement, and signed a written stipulation setting out the terms of the settlement. The instrument then signed, evidencing the settlement, reads as follows:

''In consideration of $16,300.00, cash, the receipt of which is hereby acknowledged, we, the undersigned J. T. Williams & Company of Ozark, Alabama, by B. F. Williams, hereby acknowledge full and complete satisfaction of all payments for rent due us under and by virtue of that certain rental contract dated September 25, 1943, between J. T. Williams & Company, landlord, and Mid-South Paving Company and Trinidad Asphalt Manufacturing Company, tenant, for the asphalt plant, machinery and equipment as therein described.

''The undersigned, J. T. Williams & Company, hereby agrees that the said sum is further accepted in full satisfaction and release of all claims set out in the suit filed in the Circuit Court of the First District of Hinds County, Mississippi, styled J. T. Williams & Company v. Mid-South Paving Company and Trinidad Asphalt Manufacturing Company and agrees to dismiss said suit at the cost of J. T. Williams & Company.

''It is understood that Mid-South Paving Company and Trinidad Asphalt Manufacturing Company are to load the plant at once at Kolola Springs, Miss.''

It is manifest from the above that only rent was involved in the circuit court action, and only rent was settled in the agreement evidenced by the receipt and release, supra. This evidence, however, although in writing, was permitted by the learned chancellor to be varied and contradicted by oral testimony of witnesses for the appellees in the trial in the chancery court suit, from

which this appeal was taken. Appellees sought by such evidence to prove it was their purpose, and so communicated to appellants, that all controversies were settled thereby. This was denied by appellants, who objected to the admission of the oral evidence. All of which is assigned as error here. And we think it was error. The issues in the chancery court case at bar, moreover, should have been limited at the hearing thereof only to relevant and competent evidence as to the two pleas filed by appellees, and no parole proof should have been admitted to alter or vary the documentary evidence, contractual in its nature, set out supra.

This agreement called upon appellees "to load the plant at once at Kolola Springs." It was signed August 8, 1944, but two days later appellants became dissatisfied with the progress made by appellees, and voluntarily joined their crew with that of appellees, who made no objection, but are not shown to have agreed to it, unless by implication in permitting the service, which we will take up later. Appellants had sold the equipment to a concern in New York, and were subject to penalties for delay in delivery on board at Kolla Springs. The amount involved here on this point is $1,121.37, and, having arisen after the settlement and on a contingency then not foreseeable, can with no degree of plausibility be argued as embraced therein. Neither was it embraced in either of the pleas of appellees. Its allowance was denied by the chancellor on the ground "that there was no contract, express or implied, for the payment of said charges for the reason that defendants agreed to load said plant themselves and never in anywise defaulted in said obligation or contracted with complainants to aid or assist them in such connection."

On November 29, 1944, the original bill in this clause was filed against appellees as defendants in the chancery court. J. T. Williams and Company, appellants here, complainants there, was a copartnership composed of J. T. Williams and Mrs. Starlight Williams, his wife, after

purchase by Mr. Williams of the interest therein of his former partner Dowling, who subsequently died. Mr. Williams later died, and the suit was revived in Mrs. Starlight Williams, his widow, sole heir at law, and executrix. We use, however, for the sake of convenience, the plural, complainants and appellants, rather than the singular. The chancery court bill was for the "total sum of $15,-824.85, damages suffered by the complainant as the direct result of the breaches of the contract made by the said defendants as above set forth, or for such other sums as this court may find due in the premises." It did not include any demands for rentals.

Appellants voluntarily dismissed during the chancery court trial that part of their suit represented by the item of $6,300; and excluded from our consideration, on this appeal, the item of $6,013.48; all of which appears from a written stipulation in the record. Another stipulation by counsel in the record limits the issues here on this appeal to the remaining four items; $360, repairing the Hercules Diesel Power unit; $365 for failure of appellees to return the fuel pump; $1,440 freight charges; $1,121.37, dismantling and reloading expense, incurred by appellants. It is to be borne in mind that all four of these things arose after the written contract of settlement was made and signed August 8, 1944. On that date, appellants did not know that the Diesel engine would need repair, or that the power unit would not be returned to them, because the equipment was then and there in custody of appellees. Neither could appellants know on that date that later appellees would refuse to pay the freight charge. Neither on that date could appellants know that they would volunteer to assist in dismantling and reloading the equipment; whether right or wrong in so doing.

Yet, as part of their answer, appellees filed two pleas, one of which claimed accord and satisfaction of all matters of difference between them and appellees when, on August 8, 1944, the agreed receipt and release, supra, was signed. This plea reads as follows: "And now by way

of special plea Number One, the defendant charges that on August 8, 1944, they compromised and settled a disputed claim for rent due, under the lease contract in suit and the defendants paid the complainants an amount in excess of the rent due thereon by way of compromise and in full payment, settlement, and satisfaction of all obligations and liabilities of these defendants to the complainant on said lease as will more specifically appear by reference to a true copy of said full release heretofore annexed as Exhibit 'A' hereto; and these defendants charge that said release is a full and absolute discharge and acquittance of the demand in suit which is alleged to have arisen out of the same lease contract between the same parties for and during the same period of use of the same equipment; the defendants charge that they loaded the plant in question on the railroad cars at Kolola Springs, Mississippi, at once, pursuant to the terms of said settlement and never thereafter used said equipment or any part thereof; that all of said equipment was thus loaded at complainant's request on the cars at Kolola Springs, Mississippi, designated by complainant therefor, and in the same condition as when said settlement was effected, and defendants charge that they expended for repairs on this very old equipment an unusual and extraordinary amount in order to make said equipment serviceable; that such facts and the condition of said equipment upon delivery were discussed by the parties, and the defendants paid the complainant $16,300.00 in settlement of all of said claims, demands, obligations, and liabilities of the defendants under said lease in suit.''

In our opinion, the chancellor erred in sustaining this plea, and we think he was manifestly wrong in so doing. On the trial appellees asked a separate hearing on this and also their Special Plea No. 2, discussed later, and assumed the burden of proving the facts. In this we think they failed, and the chancellor committed reversible error when he decreed that ''the pleas of res judicata and settlement and release as interposed by Mid-South Paving

Company and Trinidad Asphalt Manufacturing Company are well taken in point of fact and law and ought to be sustained."

This brings us to the plea of res judicata, which is: "And now by way of special plea Number Two to the complaint, these defendants charge that J. T. Williams & Company, this same complainant, instituted a suit on August 2, 1944, against these same defendants in the Circuit Court of Hinds County, Mississippi, having jurisdiction of said parties and subject matter, in cause No. 11,459, wherein the complainant, as plaintiff in said suit, annexed as Exhibit 'A' thereto this same lease contract dated September 25, 1943, which is made exhibit to the complaint herein, wherein said plaintiffs sought by said suit a recovery of rent and damages for the use of said equipment for the same period in the amount of $25,180.00 with subsequent rentals and interest, etc. The defendants charge that pursuant to the foregoing settlement mentioned in Plea Number One, on August 8, 1944, that said suit was dismissed by said court at the regular term of said court on October 2, 1944, by order entered in Minute Book 26, Page 239, of said court; and complainant charges that dismissal of said action was final and is res judicata of all of the claims herein sought to be propounded in this suit."

As to this plea, it will be noted that the release in part reads as follows: "The undersigned, J. T. Williams & Company, hereby agrees that the said sum is further accepted in full satisfaction and release of all claims set out in the suit filed in the circuit court of the First District of Hinds County, Mississippi, styled J. T. Williams & Company v. Mid-South Paving Company and Trinidad Asphalt Manufacturing Company and agrees to dismiss said suit at the cost of J. T. Williams & Company." The circuit court entered this judgment: "It is ordered and adjudged that this cause be and same hereby is dismissed without prejudice." The issue here is whether or not this judgment is res judicata of the chancery court suit. As

demonstrated above, the circuit court suit was for rent only, while the chancery court suit involved no items of rent whatever, but only matters that arose only after the circuit court suit was agreed to be dismissed, in the settlement of its issues. The matters involved in the chancery suit were not forseeable on August 8, 1944, the date of settlement of the circuit court suit. We think, therefore, the learned chancellor committed reversible error in sustaining the plea of res judicata.

. The $1,121.37 item was not in the pleas, but nevertheless was adjudicated along with the issues raised by them. There seems to have been no particular objection in the chancery court, and the only error assigned here as to it is that the chancery court erred in denying its recovery to appellants. The statement of the items of the $1,121.37, appended to the original bill herein, is broken down into three divisions: (1) labor paid by appellants to their employees, $429.37; (2) traveling expenses of their employees, $207.20; (3) and equipment rental and miscellaneous, $484.80. Appellees contend that they had enough labor to do the job, that "at once" in the contract meant only within a reasonable time, which would be ten days to two weeks, and that appellants were volunteers, "butting in" where they were not invited or needed. Appellants answer that time was "of the essence," and appellees so knew from the contract; that they accelerated the performance of appellees' duty to them by procuring its discharge "at once" instead of its delay; that appellees accepted their services without protest and they should be required to pay for same. Appellees complain that in the bill for this service, appellants included rent for a drag line, and that they had a drag line themselves on the job.

In support of their plea No. 1, which is the settlement of the circuit court suit for rent, wherein the parties reduced to writing their agreement of settlement, the appellees, over objection, offered evidence contrary to the written terms thereof, as stated. This they say was

justified by Dewees v. Bostick Lumber & Manufacturing Company, 96 Miss. 253, 50 So. 865, 866, where this Court said: "But, if it was, on its face, a receipt in full, it was open to explanation." And also such cases as Fowlkes v. Lea, 84 Miss. 509, 36 So. 1036, 68 L. R. A. 925, 2 Ann. Cas. 466, and many others, holding that an acknowledgment of the payment of the purchase price is merely a receipt and is subject to contradiction by parol. We do not think any of these cases are in point here. This instrument is more than a mere receipt, is contractual and sets forth the terms of a compromise of the rent issue between the parties. We said in Kohler v. Oliver, 114 Miss. 46, 74 So. 777, "we are of the opinion that the contract of compromise, under its terms, included the amount sued for in this suit, and that it was not competent for the plaintiff to testify contrary to the terms of the instrument. Compromises are favored by law." Citing 5 R. C. L. 878.

But even if evidence in contradiction of the terms of this contractual settlement were competent, the testimony in the record here was insufficient to carry the burden of proof assumed by appellees to sustain the special affirmative defense plead.

Appellees argue in justification of their plea of res judicata, that it disposed of the chancery suit, because to hold otherwise would permit splitting of causes of action, which is not allowable. The contract provided for payment of rent at stated intervals, and default in payment at such intervals gave appellants the right to sue upon each default. However, appellants waited until the contract was finished and sued for all the rentals, which action in the circuit court was compromised and settled. Then appellees were required by their commitments to do certain other things, and owed certain other duties to appellants, under the contract, wholly separable from the matter of rent, and having to do only with matters arising after the entire rental period had terminated. It was for those latter breaches this chancery suit was brought.

This is not splitting an action, but suing for severable breaches of duty under a divisible contract permissible under our law. Appellees seek to justify this argument by citing Section 329, Griffith's Mississippi Chancery Practice; Hanes v. Planters Cotton Association, 55 Miss. 654; State v. Morrison et al., 60 Miss. 74. In the last-named case, we held: "There can be but one action on one cause of action, and, if a plaintiff, having a right to recover a large amount for the breach of a bond, seeks recovery of a less sum for such breach, it is not admissible afterwards to recover an additional amount for such pre-existing cause of action. The right of action is exhausted by the first action, and it is a bar to a second. 'The law will not permit a party who has recovered in one action a portion of an entire demand, to make the residue of it the subject of another suit.'" We do not think, under the facts, the authorities cited are in point here.

On the other hand, in United States Fidelity & Guaranty Company v. Tate County, 114 Miss. 1, 74 So. 769, we quoted with approval from 8 R. C. L. 550: "If the breach is entire and total, the plaintiff may recover damages for an entire nonfulfillment; but if it is only partial and temporary, he can recover only such damages as he has already sustained, and must still accept performance of the residue of the contract if the other party will fulfill it. The question depends upon whether the damages are a new cause of action, or are only new damages resulting from the original cause of action. In the former case a new action may and must be brought, while in the latter all the damages may and must be recovered in a single action."

In Thorne v. True-Hixon Lumber Company, 167 Miss. 266, 148 So. 388, 389, this Court declared that: "A contract is generally single, and a breach of it affords but one cause of action, but this court is aligned with those jurisdictions which hold that where wages are to be paid in installments during the execution of the contract, several suits may be maintained for accrued wages. . . . The

contract, by its terms, is equivalent to the making of as many contracts as there are periods of payment, or at least the sums to be paid are divisible by its express terms; and the terms of the contract are the law of the contract.''

Much is said in the briefs about the circuit court suit having been dismissed ''without prejudice.'' This language simply operates to prevent the dismissal of a suit from barring any new suit which plaintiff might thereafter desire to bring on the same cause of action. Raleigh Co. v. Barnes et al., 143 Miss. 597, 109 So. 8. There is no pretense here that the chancery court suit at the bar is a new action for rent, and rent alone was involved in the dismissed circuit court suit. So, we think it makes no difference here whether it was or should have been dismissed with or without prejudice.

We are of the opinion that the chancellor was right in denying to appellants recovery of $1,121.37 for dismantling and reloading the equipment, after the termination of the contract, and for the reasons he gave in the decree. We think the chancellor committed reversible error in dismissing appellants' original bill because of the allegations of appellees' special pleas; and the proof thereunder, and, in our judgment the evidence should have been held within the pleadings, but since the special pleas are now eliminated, and on remand this error will probably not recur, we pretermit discussion of the error further. We do not render judgment here for appellants because we think that the case should be remanded, and tried on the merits of the three items now remaining at issue between the parties, and on relevant and competent evidence.

We, therefore, affirm the decree of the trial court as to the item of $1,121.37, but we reverse and remand the decree as to the other three items.

Affirmed in part, and reversed and remanded in part.